# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ARNOLD MACHLES, AS EXECUTOR OF THE ESTATE OF CHARLES H. KOONS,**<br>　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**MCCABE, WEISBERG & CONWAY, P.C., d/b/a MCCABE, WEISBERG & CONWAY, LLC, AND CIT BANK, N.A., d/b/a FINANCIAL FREEDOM,**<br>　　　　**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 17-1015** |

## OPINION

This case arises out of a foreclosure action involving a reverse mortgage on a property in Clifton Heights, Pennsylvania ("the Property") that became due on the death of the borrower. Plaintiff, who is the executor of the borrower's estate, claims that the Defendants, the bank that purports to hold the note and mortgage as well as the law firm hired by the bank to pursue the foreclosure action in state court, made false or misleading misrepresentations and used unfair practices. Both Defendants have filed a motion to dismiss. For the reasons outlined herein, CIT Bank N.A.'s ("CIT") motion will be granted in its entirety, and McCabe, Weisberg & Conway, P.C.'s motion will be denied.

## I.　FACTUAL AND PROCEDURAL BACKGROUND

On November 30, 2015, Financial Freedom, a division of CIT, sent Plaintiff a notice of intent to foreclose on the Property. The notice refers to a mortgage on the Property "held by CIT Bank, N.A. and serviced by Financial Freedom" and states that due to the death of the borrower, the mortgage was in in default in the amount of $161,545.23. The default, according to the

notice, could not be cured "however, foreclosure can be avoided by repaying the loan balance or selling the property for at least 95% of the appraised value." The notice represented that the property had an appraised value of $170,000.

According to Plaintiff, CIT was not the successor in interest to the note and was, thus, not entitled to foreclose on it. Furthermore, the appraised value of the Property at the time the notice was sent was $67,000, not $170,000.

These misrepresentations, claims Plaintiff, were compounded in filings made on behalf of CIT's attorneys – Defendant McCabe, Weisberg & Conway, P.C. ("McCabe") – in the mortgage foreclosure action they filed in the court of Common Pleas of Delaware County. Specifically, the pleadings include statements that CIT was the assignee of the mortgage and note – which Plaintiff contends it was not – as well as an assertion that CIT had "complied with all notice requirements as prescribed by 41 P.S. § 101, *et seq.* ("Act 6") . . ." which Plaintiff says it had not. Plaintiff also contends that a denial that CIT had violated the National Housing Act was also a misrepresentation.

Plaintiff's claims are that these representations – in the notice and in the state court pleadings – were made in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e-1692f, the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. §§ 2270.4(a)-(b), 2270.5, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-3.

## II.  LEGAL STANDARD

Defendants move to dismiss Plaintiff's claims under Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice. *Id.* at 683. Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 555).

In analyzing a motion to dismiss legal conclusions are disregarded, well-pleaded factual allegations are taken as true, and a determination is made whether those facts state a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 210-11 (3d Cir. 2009). Generally that determination is made upon a review of the allegations contained in the complaint, exhibits attached appropriately to the complaint and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.* 998 F.2d 1192, 1996 (3d Cir. 1993). Here, where Defendants have attached to their motion to dismiss various pleadings in the state court proceedings, those may properly be considered as well. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Ground Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).[1] Furthermore, a court may grant a motion to dismiss under Rule 12(b)(6) if there is a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

---

[1] CIT argues as a threshold matter that collateral estoppel and the *Rooker-Feldman* doctrines bar Plaintiff's action because the identical issues were raised in Plaintiff's motion for summary judgment on his New Matter in the underlying foreclosure action. Both doctrines apply only when an underlying litigation has finally resolved the disputed issues. *See Great W. Mining & Mineral Co.,* 615 F.3d at 166 (requiring entry of judgment in state court to apply *Rooker-Feldman*). The finality of an award largely depends on whether it is appealable. *See Lean v. Atl. City Showboat Inc.,* 2007 WL 1545288, at *2 (E.D. Pa. May 25, 2007). In this case, the state court denied Plaintiff's Motion for Summary Judgment in the foreclosure proceedings. The denial of a motion for summary judgment is interlocutory and generally not appealable. *See Aubrey v. Precision Airmotive LLC*, 7 A.3d 256, 261 (Pa.Super. 2010) (citing *Pa. Tpk. Comm'n v. Atl. Richfield Co*., 394 A.2d 491 (Pa. 1978); Pa. R.A.P. 311, 341). Therefore, neither doctrine applies to bar Plaintiff's claims.

## III. DISCUSSION

### a. FDCPA

Plaintiff alleges that the Defendants made false or misleading representations "in connection with the collection of [a] debt." 15 U.S.C. § 1692e. More specifically, he contends that the Defendants violated multiple provisions of the FDCPA regarding the prohibition from "falsely represent[ing] the character and/or legal status of a debt, . . . represent[ing] and/or impl[ying] that nonpayment of a debt would result in the seizure, garnishment, attachment, or sale of property, when such action was unlawful, . . . [or] us[ing] a false representation or deceptive means to attempt to collect a debt."[2] 15 U.S.C. §§ 1692e(2), 1692e(4), 1692e(10). Given that the FDCPA is designed "to eliminate abusive debt collection practices by debt collectors," its language is construed broadly to give full effect to those purposes. *See* 15 U.S.C. § 1692(e); *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005).

To state a FDCPA claim, a plaintiff must allege that: (1) he is a consumer; (2) the defendant is a debt collector; (3) the challenged practice involves an attempt to collect a "debt"

---

[2] Plaintiff's claim that Defendants "threatened to take an action that could not legally be taken, in violation of FDCPA, 15 U.S.C. § 1692e(5)," is, on its face, not viable. The only allegations involving a threat to take legal action occurred in the Notice. However, as discussed below, misrepresentations contained in the Notice fall outside the statute of limitations. The only claims which survive concern misrepresentations made by the Defendants in the foreclosure Complaint. Those misrepresentations do not *threaten* to take that action, but actually took it by filing the complaint." *Delawder v. Platinum Fin. Servs. Corp.*, 443 F. Supp.2d 942, 948 (S.D. Ohio 2005). Therefore, Plaintiff's claim under subsection 1692e(5) is not viable.

Similarly, Plaintiff's claim that Defendants attempted to "collect amounts that were not expressly authorized by any agreement creating the debt" under Section 1692f(1) is also not viable. The focus of a 1692f(1) violation is whether the *amount* sought is authorized. *See Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 369 (3d Cir. 2011). Here, the complaint seeks only "the sum of $162,561.82, together with interest accruing thereafter, other costs and charges *collectible under the Mortgage and applicable* law. . . ." In other words, it seeks only to collect on amounts allowable under the Mortgage and applicable law. Accordingly, Plaintiff does not state a claim for a violation of Section 16921f(1).

as the FDCPA defines it; and (4) the defendant has violated a provision of the FDCPA in attempting to collect a debt. *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

In this case, Defendants do not challenge Plaintiff's status as a consumer or that the notice and the lawsuit were attempts to collect a debt. Neither does McCabe contest that it is a "debt collector" within the meaning of the FDCPA. However CIT does seek to refute that label and both CIT and McCabe argue that neither of them has violated a provision of the FDCPA.

### A. Any Alleged Misrepresentations Made Before March 7, 2016 are Barred by the Statute of Limitations

As a preliminary matter any representations contained in the Notice of Intent to foreclose on the property are not actionable under the FDCPA because they are barred by the statute of limitations. A claim under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). In this case, the notice was sent out on November 30, 2015, one year, three months and one week before Plaintiff filed suit on March 7, 2017. Therefore, the only misrepresentations that are at issue here are the allegedly false statements made in the state court foreclosure action, which was filed on March 8, 2016 or in the reply to Plaintiff's answer and new matter, filed on July 8, 2016.

### B. CIT is not a "Debt Collector" Under the FDCPA

Prior to evaluating those statements, there is a question as to whether CIT is a "debt collector" within the purview of the FDCPA. The FDCPA defines a "debt collector" as "[1] any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be due another." 15 U.S.C. § 1692a(6). Thus, "a business may be a 'debt collector' because its 'principal purpose' is

the collection of debts or because it 'regularly' engages in the collection of debts." *Oppong v. First Union Mortg. Corp.*, 215 F. App'x 114, 118 (3d Cir. 2007). Here, Plaintiff merely recites the FDCPA's definitions of a "debt collector" in his Complaint, alleging no facts to support his assertion that CIT's "principal purpose" is the collection of debt. Neither does he allege any facts to support the allegation that CIT "regularly collect[s]" debts. These threadbare recitations of the legal definition of a debt collector, without more, fail to sufficiently allege that CIT is a debt collector. *Cf. White v. Bank of America Bank, NA*, 597 Fed. App'x 1015, 1020 (11th Cir. 2014) (dismissing FDCPA claims where the plaintiff "alleged no facts, only a conclusory assertion that [Defendant] 'regularly attempt[ed] to collect debts."); *Glover v. F.D.I.C.,* 698 F.3d 139, 152 (3d Cir. 2012) (refusing to dismiss FDCPA claims where Plaintiff alleged that Defendants regularly institute litigation to collect debts and Defendants self-identified as debt collectors in litigation documents).

The term "debt collector" in the statute specifically excludes "any person collecting or attempting to collect any debt owed . . ." if the debt "was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). Plaintiff alleges that the mortgage *was* in default at the time it was obtained by CIT and extrapolates from that CIT is not a debt collector. There is a dispute between the parties as to whether the mortgage was in default at the time it was obtained by CIT. The complaint alleges that it was, but provides little more than a bald legal assertion unsupported by factual allegations. CIT meanwhile attaches to its brief documentary evidence – which cannot be considered on this motion to dismiss – suggesting that it was not. There is, however, no need to allow the litigation to proceed to resolve the dispute because if the debt was not in default at the time it was obtained by CIT, pursuant to section 1692a(6)(F) CIT is not a debt collector. And, even if it was in default, the Supreme Court has recently clarified that

6

the FDCPA's definition of "debt collector" does not include entities that obtain debts originated by others and then seek to collect those debts on their own account even if those debts were in default when obtained. *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1722 (2017):

> For while the statute surely excludes from the debt collector definition certain persons who acquire a debt before default, it doesn't necessarily follow that the definition must include anyone who regularly collects debts acquired after default. After all . . . you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector.

*Id.* at 1724.

Thus, CIT is not a debt collector and Plaintiff's FDCPA claims against it must be dismissed.[3]

### C. FDCPA Liability Arising from Statements made in Court Filings

Plaintiff's remaining FDCPA claims concern only the statements included by McCabe in the complaint it filed on behalf of CIT in the foreclosure action as well as the statements it made in the reply it filed to Plaintiff's answer and new matter in that action.

Both Plaintiff and McCabe agree that the two statements made in the Complaint – that CIT was not the successor in interest to the Note and that CIT violated the notice requirements of

---

[3] Plaintiff alleges that CIT also violated the UTPCPL and FCEUA. The UTPCPL prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. Stat. Ann. § 201–3. However, in order to assert a violation of the UTPCPL based on a false representation, Plaintiff must allege justifiable reliance on the misrepresentation. *See Hunt v. U.S. Tobacco Co.*, 538 F.2d 217, 221 (3d Cir. 2008). Plaintiff argues that he demonstrated justifiable reliance by hiring an attorney to defend the foreclosure action. However, hiring a lawyer to file an answer denying Defendants' alleged misrepresentations and also to assert a new matter demonstrates the opposite of reliance. It demonstrates that Plaintiff understood that the representations were false and chose, instead, to fight them, particularly. *See Kimmel v. Phelan Hallinan & Schmieg, PC*, 847 F. Supp.2d 753, 771 (E.D. Pa. 2012) (describing Plaintiff's conduct in hiring an attorney as "the opposite of reliance; it's defiance. After being (falsely) told they were liable on the debt, they hired lawyers and fought [] the lawsuits."). Therefore, Plaintiff's UTPCPL claim against CIT must be dismissed.

Plaintiff's FCEUA theory is that CIT violated the FCEUA because any violation of the FDCPA or UTPCPL constitutes an unfair or deceptive practice under the FCEUA. *See* 73 Pa. Stat. Ann § 2270.4(a) (violation of the FDCPA is a *per se* violation of the FCEUA); *Salvati v. Deutsche Bank Nat. Tr. Co.,* 575 F. App'x 49, 57 (3d Cir. 2014) ("[Plaintiff] has no viable remedy under the UTPCPL, and thus his FCEUA claim . . . must also fail."). However, since Plaintiff's FDCPA and UTPCPL claims must be dismissed, his FCEUA claim, which depends on the success of either claim, is also not viable and must be dismissed.

7

Act 6 – are potentially actionable under the FDCPA. The parties dispute, however, whether a debt collector's technical pleading denial to allegations made by the alleged debtor in his own pleadings can constitute misstatements that are also actionable under the FDCPA.

The dispute is easily resolved by reference to the Third Circuit case *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168 (3d Cir. 2015), *cert.denied sub nom.*, *Udren Law Offices, P.C. v. Kaymark,* 136 S. Ct. 794 (2016). In that case, the Plaintiff had sought relief under Sections 1692e(2)(a), (5), (10) and 1692f(1) of the FDCPA – the same provisions invoked by Plaintiff here – premised on statements made by a law firm on behalf of its client in a foreclosure complaint filed in a Pennsylvania state court. The issue directly before the Third Circuit was whether statements made in the foreclosure complaint violated the FDCPA. In a tightly reasoned opinion, the Court held that: "[A] communication cannot be uniquely exempted from the FDCPA because it is a formal pleading or, in particular, a complaint." *Id.* at 177. Although the Court's focus was on whether statements made in a foreclosure *complaint* were exempted from the FDCPA, the language of its holding was broader – not only can statements made in complaints give rise to FDCPA liability, statements made in *any* "formal pleadings" can as well. Thus, the issue presented here is whether the reply to Plaintiff's answer and new matter filed by McCabe on CIT's behalf in the state court foreclosure action, is a "formal pleading." Pennsylvania Rule of Civil Procedure 1017 sets forth the pleadings allowed in a state court action which include not only a complaint but also "a reply if the answer contains new matter. . . ." Pa. R. Civ. P. 1017(2). Given this Rule, it follows inexorably that the filing is a formal pleading. Further, as it was filed as a pleading in a foreclosure proceeding involving a defaulted mortgage on the Property, it was filed in connection with an attempt to collect a debt. *See Kaymark*, 783 F.2d at 178-79 (foreclosure actions meet the broad definition of debt collection under the FDCPA); *see*

8

*also Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 266 (3d Cir. 2013) (quoting *Grden v. Leijin Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011)) ("for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor.").

### D. Misrepresentations Made in the Complaint and the Reply to Answer and New Matter

Turning now to the statements made in the complaint and in the reply to Plaintiff's answer and new matter for a determination as to whether the allegations pass muster in the face of a challenge under Rule 12(b)(6). The statements Plaintiff complains of are: (1) CIT was the successor in interest to the note and mortgage and, thus, was entitled to foreclose on the note; (2) that CIT complied with the notice requirements of Act 6. Plaintiff also alleges that McCabe made an additional representation in the reply to new matter in that it denied CIT had violated the National Housing Act.

The standard for evaluating these misstatements in the context of an FDCPA claim is generally through the lens of the "least sophisticated consumer." The focus is thus "on whether a debt collector's statement in a communication to a debtor would deceive or mislead the least sophisticated debtor." *See Jensen v. Pressler & Pressler*, 791 F.3d 413, 420 (3d Cir. 2015). Here, Plaintiff argues that because the misstatements were contained in formal pleadings which were drafted by counsel and served upon counsel, they should be analyzed from the perspective of a "competent attorney" which analysis mandates that the alleged FDCPA claims cannot proceed. He turns to district court cases[4] to find support for his position as well as to an

---

[4] *Fratz v. Goldman & Warshaw, P.C.*, 2012 WL 4931469, at *3 (E.D. Pa. Oct. 16, 2012); *see also Marshall v. Portfolio Recovery Assocs., Inc.*, 646 F. Supp.2d 770 (E.D. Pa. 2009) (applying the "competent attorney" standard); *Wright v. Phelan, Hallinan & Schmieg, LLP*, 2010 WL 786536 at *6 (E.D. Pa. Mar. 8, 2010) (discussing the "competent attorney" standard, but ultimately finding no FDCPA violation occurred).

unpublished non-precedential Third Circuit opinion[5] that declined to decide whether the "competent attorney" standard applies to communications between attorneys in litigation. *See Simon v. FIA Card Servs. NA*, 639 F.App'x 885, 889 (3d Cir. 2016). There is no need, however, to parse the precedential value of these cases given that the Third Circuit expressly applied the least sophisticated consumer – rather than the competent attorney standard – in *Kaymark* (which was brought under the same provisions of the FDCPA and involved a substantially similar fact pattern). *Kaymark*, 783 F.3d at 176 (on a motion to dismiss "we must view the Foreclosure Complaint through the lens of the least-sophisticated consumer and in the light most favorable to the Plaintiff). Accordingly, the misstatements alleged here shall be evaluated from that perspective. The standard incorporates a requirement that a false statement must be "material" in order to be actionable, *i.e.,* it must be capable of influencing the decision of the least sophisticated consumer by affecting their ability to make intelligent decisions. *Jensen*, 791 F.3d at 421. "The standard is an objective one, meaning that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be." *Id*. at 419. The next task is, thus, to analyze whether Plaintiff's factual allegations regarding the misrepresentations made in the foreclosure complaint are material and whether they plausibly state a FDCPA claim.

    **i. Plaintiff Has Stated a Claim Related to McCabe's Representation that CIT Was the Successor in Interest to the Note**

Plaintiff alleges that CIT was not the successor in interest to the note and mortgage and not entitled to foreclose. Although, there are no additional factual allegations explaining why Plaintiff has reached this conclusion, taken as true it allows the court to draw a reasonable inference that defendant is liable for an FDCPA violation. Certainly, who owns the mortgage

---

[5] Internal Operating Procedures of the United States Court of Appeals for the Third Circuit 5.7.

and note is material to the Plaintiff – who would quite rightly want to be sure that he was paying the amount owed to the correct party. *See, e.g. Potoczny v. Aurora Loan Servs., LLC*, 33 F. Supp.3d 554, 564 (E.D. Pa. 2014) (assuming that "by suing on a debt that the foreclosure plaintiff did not own," plaintiffs could have violated the FDCPA, but finding that Plaintiffs did, in fact, own the note and mortgage); *Chulsky v. Hudson Law Offices, P.C.*, 777 F. Supp.2d 823, 834 (D.N.J. 2011) (concluding that "[p]laintiff has sufficiently plead a § 1692e violation" by alleging that the foreclosure plaintiff was not the true owner of the mortgage and note); *Dewalder v. Platinum Fin. Servs. Corp.*, 443 F. Supp.2d 942, 947-48 (S.D. Ohio 2005) ("Courts have recognized claims under Section 1692(e) that are . . . based upon a debt collector's filing of a complaint to collect a debt . . . that allegedly misrepresented the amount of the debt or the debt collector's legal claim upon the debt.").[6]

### ii. Plaintiff Has Sufficiently Pled a Violation of the FDCPA Related to McCabe's Act 6 Compliance Statement

Plaintiff next claim is that Defendants falsely stated that they had complied with 41 P.S. § 403(c)(3) – known as "Act 6" – which requires the mortgagee to "clearly and conspicuously state, *inter alia*, the right of the debtor to cure the default and exactly what performance, including what sum of money, if any, must be tendered to cure the default." The notice provisions of Act 6, at issue in this case, are "typically raised as a defense to mortgage foreclosure proceedings." *Bennett v. Seave*, 554 A.2d 886, 891 (Pa. 1989). "[T]he remedy for a defective Act 6 notice, such as the pre-foreclosure notice at issue in this case, is typically to set

---

[6] *But see, e.g., Lake v. MTC Fin., Inc.,* 2017 WL 3129624, at *7 (W.D. Wash. July 24, 2017) (declining to accept "conclusory allegations and legal conclusions" that foreclosure plaintiff "made a false representation that it had rights to foreclose . . . as true"); *White v. BAC Home Loans Servicing, L.P.*, 2011 WL 1483901, at *7 (E.D. Mo. Apr. 19, 2011) (holding that "plaintiff's allegations regarding [Defendant's] interest in the subject property . . . are unsupported legal conclusions or naked assertion devoid of factual enhancement [and] not properly accepted as true when considering these motions to dismiss."); *Jung v. Bank of Am., N.A.*, 016 WL 5929273, at *9 (M.D. Pa. Aug. 2, 2016) (dismissing FDCPA claims because Plaintiff merely offered a "formulaic recitation of acts prohibited by the FDCPA.").

aside the foreclosure or deny a creditor the ability to collect an impermissible fee." *Benner v. Bank of Am., N.A.*, 917 F. Supp.2d 338, 357 (E.D. Pa. 2013). In this case, however, Plaintiff raises the defective notice as a basis, not for a violation of Act 6, but as a violation of the FDCPA.

Plaintiff appears to reason that McCabe misrepresented their compliance with Act 6 in the underlying foreclosure action and had they accurately represented that the foreclosure Notice did not comply with Act 6, the court would be required to set aside the foreclosure. By misrepresenting compliance with Act 6, McCabe, acting on behalf of CIT, would become entitled to foreclose on the Property when they otherwise would not be entitled to foreclose. The FDCPA prohibits debt collectors from using a misrepresentation in order to collect a debt. By falsely misrepresenting compliance, McCabe would become able to foreclose on the mortgage, which is prohibited by the FDCPA.[7] Once again, whether or not CIT was entitled to foreclose on the Property is a fact that Plaintiff would need in order to make an intelligent decision about how to proceed with payment on the defaulted debt.

### E. Denial by CIT that it Violated the National Housing Act.

The final misrepresentation that Plaintiff claims McCabe made in filings in the foreclosure action concerns the National Housing Act. More specifically, the allegation is that in the reply to Plaintiff's answer and new matter, McCabe denied that CIT had violated the National Housing Act, 12 U.S.C. § 1715z-20, and its implementing regulations, 24 C.F.R. § 206.15, which require, according to the Complaint, that a mortgagee permit a mortgagor to sell

---

[7] McCabe argues that, even though the Notice stated that Plaintiff had no right to cure, the Notice complied with the Act 6 requirement to state Plaintiff's right to cure the default because there is no right to cure a reverse mortgage upon the death of the borrower. *See* 24 C.F.R. 206.125 (stating requirements under HUD regulations). Whether a reverse mortgage may be cured, however, is a matter of contractual interpretation, and not statute or regulation, *see Nationstar Mortg., LLC v. Williams,* 2016 WL 5887356, at *4 (Pa. Super. Ct. Sept. 12, 2016) (holding that "[a] reverse mortgage is a contract" which requires the court to "interpret[] the meaning of [the] contract . . ." ). The Mortgage is not attached to the Complaint nor included as an exhibit to McCabe's Motion to Dismiss. Therefore, it is not properly considered at this stage of the litigation.

the property for at least 95% of the appraised value as determined by an appraisal obtained by the mortgagee no later than 30 days after the mortgagee became aware of the mortgagor's death. Reading the Plaintiff's Complaint broadly, the contention is that the denial was a misrepresentation because CIT had violated the National Housing Act regulation by representing that the appraised value of the Property was $170,000 when, in fact, it had obtained an appraisal within 30 days of becoming aware of the borrower's death that put the value of the Property at $67,000.

McCabe's stated reliance on CIT's representations concerning their compliance with the National Housing Act may not be considered on a motion to dismiss. The FDCPA provides that "[a] debt collector may not be held liable . . . if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). McCabe argues that it was unaware of the inconsistent appraisal and relied on facts provided by its client, CIT. Safe harbor under this provision of the FDCPA is an affirmative defense and cannot be considered in a motion to dismiss. *See Sayyed v. Wolpoff & Abramson, LLP,* 485 F.3d 226, 235 (4th Cir. 2007) (holding that the "district court erred in dismissing [Plaintiff's] claim outright" when defendants argued that they relied on their client's representation regarding the validity of a debt).

A statement that a creditor complied with the National Housing Act's requirement to provide an accurate appraisal value of a property could mislead a consumer if the underlying appraisal incorrectly stated the value of the property. By asserting that Defendants complied with the statute might lead the least sophisticated consumer to believe that the incorrect appraisal accurately stated the appraisal value of the property. This is particularly problematic here where

the appraisal stated that the Property value exceeded the current mortgage. Accordingly, Plaintiff's claim that McCabe misrepresented its compliance with the National Housing Act survives the motion to dismiss.

### F. UTPCPL Claims Against McCabe

Plaintiff also asserts a claim against McCabe and CIT for a violation of the UTPCPL. The UTPCPL provides a private right of action to "[a]ny person who purchases or leases good or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use of employment by any person of a method, act or practice declared unlawful by [73 Pa. Cons. Stat. § 201–3]." 73 Pa. Cons. Stat. § 201-9.2(a). Under section 201-3, it is unlawful to employ "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 201-3.

McCabe argues that, under the Pennsylvania Supreme Court case of *Beyers v. Richmond*, 937 A.2d 1082 (Pa. 2007), the UTPCPL does not apply to attorneys practicing law. First, *Beyers* did not alter the settled law in the Third Circuit that attorneys who act as "debt collectors" are not engaged in the practice of law. *See Yelin v. Swartz*, 790 F. Supp.2d 331, 338 n.5 (E.D. Pa. 2011). Second, the court in *Beyers* distinguished attorneys engaged in debt collection activities from those practicing law. *Beyers*, 937 A.2d at 1089 ("The UTPCPL was interpreted to apply to debt collection as a trade or commerce."). Third, the Third Circuit has directly addressed this issue and held that the UTPCPL applies to attorneys engaged in debt collection activities. *See Kaymark*, 783 F.3d at 180 n.4 ("[A]ttorneys engaged in debt collection – considered an "act of trade or commerce" within the definition of the UTPCPL – are not . . . immun[e] [] from liability."). McCabe encourages a distinction between debt collection work and litigation work – the latter which it would not have covered by the UTPCPL. This distinction is untenable after

*Kaymark*. The Third Circuit noted that if the alleged misconduct in the complaint concerns the adequacy of an attorney's legal representation, then it is not actionable under the UTCPL. *Id.* But, if the matters complained of concern that attorney's debt collection efforts, those efforts are an "act of trade or commerce" within the definition of UTPCPL and are not exempt from its coverage. Here, Plaintiff's complaint is not about McCabe's legal representation, rather, it concerns its activities as a debt collector, which activities are not immunized from UTCPL liability. Therefore, Plaintiff's claim under UTPCPL survives McCabe's motion to dismiss.

        An appropriate order follows.

                                        **BY THE COURT:**

                                        **/s/Wendy Beetlestone, J.**

                                        _____

                                        **WENDY BEETLESTONE, J.**

11/7/17